[Crim. Nos. 33, 34, 35.    Filed June 8, 1886.]

[S. C. 11 Pac. 472.]

THE UNITED STATES OF AMERICA, Plaintiff and Respondent, v. AMMON TENNEY, Defendant and Appellant.

SAME v. PETER J. CHRISTOFFERSON.

SAME v. I. C. KEMP.

On rehearing. Former opinion, *ante*, p. 29.

1. CRIMINAL LAW—EDMUNDS ACT—POLYGAMY—INDICTMENT—TO ALLEGE COHABITATION AFTER MARRIAGE IN COUNT FOR POLYGAMY NOT FATAL BEING MERE SURPLUSAGE—22 U. S. Stat. L. 30; Supp. Rev. St. U. S. 1891, Chap. 47, p. 331.—Where in a count in an indict-

ment under the Edmunds Act after properly alleging a polygamous marriage the pleader proceeds further and states that cohabitation followed such marriage, such latter statement is mere surplusage *and does not render the count bad.*

2. SAME—EVIDENCE—ADMISSIONS OF DEFENDANT COMPETENT IN PROOF OF MARRIAGE—OPEN COHABITATION COMPETENT—RULE OF PROOF OF SECOND MARRIAGE SAME AS OF FIRST—NO CEREMONY OF MARRIAGE REQUIRED IN THIS TERRITORY—HIGHEST EVIDENCE OF MARRIAGE NOT REQUIRED—ADMISSIONS AND COHABITATION SUFFICIENT TO ESTABLISH MARRIAGE.—Admissions of defendant, often and apparently deliberately made, that he was married to the person named in the indictment and that he openly lived with the two women named as his wives and claimed them as such was competent and admissible evidence of marriage to person so named. Proof of second or subsequent marriage does not differ from proof of first one. The same kind of evidence is admissible in each case In this territory no ceremony of marriage is required. In this class of cases the highest evidence of marriage is not required. Such proof as was made in this case is competent and sufficient to establish marriage.

3. SAME—SAME—WHERE EVIDENCE IS INTRODUCED BY ONE PARTY HE HAS NO RIGHT TO COMPLAIN IF THE OTHER BE PERMITTED TO FOLLOW—PROOF OF COHABITATION IN ANOTHER TERRITORY COMPETENT TO PROVE CHARGE OF COHABITATION WITH MORE THAN ONE WOMAN UNDER THIRD COUNT—EVIDENCE COMPETENT AND ADMISSIBLE UNDER ANY COUNT OF INDICTMENT AT THE TIME GIVEN CANNOT PROPERLY BE EXCLUDED.—Where defendant testified that he lived with the two women in Utah as his wives he cannot complain if the prosecution be permitted to put questions and ascertain the facts concerning such statements. Proof of such cohabitation was admissible and competent under the third count of the indictment relating to cohabitation with more than one woman. Evidence material and competent under either count of an indictment at the time given cannot properly be excluded.

4. SAME—INSTRUCTIONS TO JURY—MUST BE TAKEN AS WHOLE—WHERE INSTRUCTION IS CORRECT IN PRINCIPLE IT MATTERS NOT WHERE THE WORDS ARE OBTAINED—WHERE IT APPEARS THAT THE INSTRUCTION OBJECTED TO AS ERRONEOUS IS AMBIGUOUS BUT THAT SUCH AMBIGUITY HAS BEEN CURED BY OTHER DEFINITE INSTRUCTIONS THERE WILL BE NO REVERSAL—INSTRUCTIONS AND EVIDENCE REVIEWED AT LENGTH.—Instructions to juries must be read and considered as a whole. Where the rule of proof of marriage was read from the Arizona Statute as an instruction to the jury as to what was proper and sufficient proof of marriage, and objection

taken for the reason that the law of Arizona was not applicable to the case, if the principle laid down was correct—as it was—it is of no importance where the court obtained the words with which he announced the principle. Where the court instructed the jury in substance that even though the defendant had two wives in the territory of Utah, in violation of law, the fact that he had continued the same offense for many years, it being a continuous offense, would be no defense to him to make against this prosecution. Although such instruction taken alone was ambiguous and susceptible of misconstruction by the jury and erroneous, yet, when read with positive instructions given with it, it appears that the jury could not have been misled, and there was no reversable error. Instructions and evidence reviewed at length.

5. EDMUNDS ACT—PURPOSE OF—POLYGAMOUS MARRIAGES VOID—KNOWLEDGE THAT FIRST WIFE IS LIVING IMMATERIAL.—Under no definition of marriage, as understood by Christian people, can polygamous unions be looked upon as marriages. These unions are what the Edmunds law aims to punish and suppress. It is not necessary in order to make out the offense, that the second marriage should be a valid one. Every bigamous or polygamous marriage is void, and it is the *entering into the* void marriage while a *valid* one is in existence that the law punishes. Neither has the knowledge of the fact that a prior wife was living anything to do with the question.

Porter, J., dissenting upon the ground that the offense of polygamy was shown to have been barred by the statute of limitations.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. Affirmed.

The facts are stated in the opinion.

John A: Rush & J. C. Herndon, (Thos. M. Fitch, of Counsel), for Appellant.

J. A. Zabriskie, U. S. Dist. Atty., Ed. W. Wells, Asst. U. S. Dist. Atty., for Respondent.

SHIELDS, C. J.—In 1882 the congress of the United States passed an act to amend section 5352 of the Revised Statutes of the United States, in reference to polygamy, and

for other purposes. This is the "Edmunds Law," so called. Section 1 provides that "every person who has a husband or wife living, who, in a territory or other place over which the United States have exclusive jurisdiction, hereafter marries another, whether married or single; and any man who hereafter simultaneously, or on the same day, marries more than one woman, in a territory or other place over which the United States have exclusive jurisdiction,—is guilty of polygamy," and shall be punished as therein stated. In section 3 of the act it is provided "that if any male person, in a territory or other place over which the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor," and, on conviction thereof, shall be punished in the manner provided.

The defendant, Ammon M. Tenney, was indicted under this law in the Third judicial district court of Arizona, at Prescott, in said territory. On trial before a jury he was convicted of the crime of polygamy. He brings the case to this court, alleging errors in the rulings and instructions of the court below, and also defects in the indictment. We will consider the objections in the order we deem most convenient.

1. As to the pleadings. The indictment consists of three counts. The first count charges that in March, 1883, in Apache county, in the Third judicial district of Arizona, the defendant, being then and there a married man, and having a wife, Anna Tenney, with whom he was then living, unlawfully married another woman, Anna Eliza Tenney. The correctness in form of this portion of the count, and so far, is not questioned. The count then further recites that the defendant, from the time of his marriage to said Ann Eliza Tenney, continued to live and cohabit with her as his wife, up to the time of the finding of the indictment. The second count charges the defendant with having simultaneously, and on the same day, married more than one woman. As no proof was put in under this count, and no question raised upon it, no further attention need be given to it. The third count alleged a violation of section 3 of the act referred to. By it the defendant was charged with having cohabited with more than one woman

at the time named, and within the said Third judicial district. No question is made as to the sufficiency of this count. The defendant, as we have already stated, was convicted of polygamy under the first count.

Upon the trial the defendant insisted that such first count was bad, and so fatally defective that no conviction could legally be had under it, for the reason that it alleged two separate and distinct offenses, to wit, polygamy and unlawful cohabitation. The objection is without force. It is perfectly clear that the indictment charges the three offenses named in the act, and separate count was intended to be and is given to each. It is true that the first count, after alleging with particularity and preciseness the polygamous marriage, does proceed further, and state that cohabition followed such marriage. This, perhaps, was unnecessary to make out a complete statement of the crime of polygamy under this law, but it does not follow from that that the count is bad. The statement that cohabition followed such polygamous marriage was added as the result or effect of such marriage, and as part of a connected and complete description of that offense. Incidents and facts connected with and springing from the criminal act charged, although sometimes unnecessary, are very often put into an indictment so that there may be, on the face of the pleading, the complete history of the transaction that it is expected the proofs will disclose. In this case nothing more was undertaken. This is clear from the fact that unlawful cohabitation, as a separate and distinct offense, is afterwards charged in a count by itself. If the reference made to that subject in the first count is, as claimed by counsel, wholly unnecessary to a complete description of the crime of polygamy, we should still treat such reference as mere surplusage, without force to destroy a count otherwise sufficient. We have no doubt the count is a perfectly good one.

2. Objection is next made to the mode of proof of the marriage of defendant to Ann Eliza Tenney. This marriage was proven by the admissions of the defendant, often and apparently deliberately made, that he was married to such person, in the county of Apache, at the time named in the

indictment; and also by testimony showing that the defendant thereafter openly and notoriously lived with the two women named as his wives, in Apache county, and claimed them as such. In this connection it is proper to state that it was admitted the defendant was married to his first wife, Anna, in Utah, some years previous to his claimed marriage with Ann Eliza, in Arizona. On the argument we were urged to say that the proof of marriage just referred to was not sufficient proof thereof, and that, therefore, there was no legal marriage shown to have taken place with Ann Eliza; from which, it was argued, it would follow that the defendant was improperly convicted of polygamy. We are of the opinion that the proof given was competent and admissable evidence of a marriage to Ann Eliza Tenney, as charged. Its weight, of course, was for the jury. The jury regarded it as satisfactory proof of the marriage, and we have no doubt it was sufficient and proper evidence upon which they could find that fact.

The case of *Miles* v. *United States*, 103 U. S. 304, disposes of the questions raised here adversely to the defendant. In that case, which was a prosecution for bigamy, the trial judge charged the jury that the declarations of the accused that he was married were evidence that the jury might consider as tending to prove an actual marriage; and, further, that such marriage, the same as any other fact, might be proven by the admissions of the defendant, or by circumstantial evidence, and that it was not necessary to prove it by witnesses who were present at the ceremony. In commenting on this charge the Supreme Court of the United States in its opinion says: "We are of opinion that the district court committed no error in admitting such declarations, or in its charge to the jury concerning them." This is directly in point here, and decisive of the questions raised; nor does proof of a second or subsequent marriage, as intimated by counsel, differ from proof of a first one. The same kind of evidence is admissable in each case. 3 Greenl. Ev. § 205.

If, in addition to these authorities, reasons were necessary to be stated in support of our decisions on this branch of the case, such are not wanting, and springing, too, from the very

nature of the question discussed. Some of these reasons have
been stated by the courts. The supreme court of Utah, con-
sidering a prosecution under the Edmunds law, says: ''It is
now a part of the history of this territory that in cases of this
character nearly all of the witnesses upon whom the govern-
ment has to depend to make out its case are unwilling wit-
nesses. They are generally members of the different house-
holds of the defendant, under his influence, and also subjct to
a powerful church pressure to compel them to shield the ac-
cused.'' *United States* v. *Snow,* 4 Utah, 295, 9 Pac. 686. Such
difficulties are not confined to Utah alone. Similar embar-
rasments are met everywhere that this law is undertaken to be
enforced. Again, in this territory, no ceremony of marriage
is required. If a, man and woman presently agree to take
each other as husband and wife, and from that time live
together professedly in that relation, such is a valid marriage
here, even though there should be a total absence of all cere-
mony. These reasons, and the law as laid down by the highest
tribunal in the country, induce us to reject the argument
urged upon us that we should require in this class of cases
the highest evidence of marriage, and to hold, as we do, that
marriage may be proven by the admissions of the accused,
where they appear to be freely and deliberately made, as in
this case, or may be proved by circumstances satisfying a
jury of such fact. In this case the marriage of the defendant
with Ann Eliza Tenney was proven both by the admissions
of the defendant, and by other facts and circumstances inde-
pendent of such admissions. We have already said such proof
was competent and sufficient.

3. It is next assigned for error that the court admitted
proof of certain facts occurring in Utah several years prior
to the finding of the indictment. Acording to such testimony
the defendant stated at such time, and in Utah, that he
was then living with the two women named as his wives; and
some proof, aside from his statement, was put in, tending to
show he did cohabit with both the women in that territory.
This subject, however, was first opened up and gone into
by the defendant himself, presumably for the purpose of
disputing the theory of the prosecution that he was married

to Ann Eliza in Arizona. Such being the fact, he has no ground of complaint in this regard. The subject being thus open, the prosecution had an undoubted right to put inquiries, and ascertain facts, with reference thereto. But aside from this view, and not desiring to put our opinion entirely on that ground, the testimony was clearly competent and admissable under the third count of the indictment. If material and competent under either count at the time it was given, it was right to receive it, and it could not properly have been excluded. There was no error here.

4. We next consider the errors alleged to have been committed by the district judge in his charge. These are the principal grounds relied upon for a reversal, and we have therefore considered them with great care. There are isolated sentences in the charge that were selected and pressed upon our attention at the hearing, and as to the correctness of which, as so presented, we then had some doubts. A more careful examination of the entire charge, however, has convinced us that it is correct in law, and that, taken as a whole, and so read and considered, there is nothing in it of which the defendant can complain as presenting the case unfairly to the jury. The real issues upon which the jury were to pass were clearly stated, and the rules that must govern in the consideration of the case, so as to avoid a decision from mistake, passion, or prejudice, were well laid down.

Two objections, however, are made to the instruction. It is said, in the first place, that the district judge improperly followed a rule of evidence as to proof of marriage found in the statutes of Arizona; and, next, that the charge left the jury at liberty to find the marriage of the defendant to Ann Eliza Tenney in Arizona from facts indicating his marriage to her years before in Utah. We will consider these objections separately.

The statutes of Arizona referred to, provide that, in a prosecution for bigamy, it shall not be necessary to prove either marriage by the register or certificate thereof, or other record evidence, but the same may be proved by such evidence as is admissable to prove a marriage in other cases. In his charge the district judge referred to this statute, and said that, in this

case, no higher or further proof of the marriage of the defendant to Ann Eliza Tenney, in the territory of Arizona, was required than that demanded by this statute. It is contended that this instruction was erroneous for the reason that the statutes of Arizona had no application to this case, it being a prosecution for a violation of a law of the United States, and not for a violation of any law of the territory of Arizona. It is true that this is a prosecution for a violation of a statute of the United States, but in such prosecutions it is not an unusual thing to refer to the state or territorial statutes in matters of practice and evidence. *Clinton* v. *Englebrecht,* 13 Wall. 434; *Hornbuckle* v. *Toombs,* 18 Wall. 652. But the rule of evidence prescribed by the Arizona statute does not differ from the rule fixed by the supreme court of the United States in the *Miles Case,* as proper and suffiicient evidence of marriage. The marriage laws of Arizona would govern as the proof of marriage. If the principle laid down by the district judge was correct,—and we have already seen that it was,—it is of no importance where he obtained the words with which he announced that principle,—whether from the statutes of Arizona, the opinion of the supreme court of the United States, or elsewhere. The instruction was correct in principle, and that is what we are concerned most about.

5. In the portion of the charge next claimed to be erroneous the court charged the jury, in substance, that, even though the defendant had two wives in the territory of Utah, in violation of law, the fact that he had continued the same offense for many years, it being a continuous offense, would be no defense for him to make against this prosecution. It is urged that this instruction authorized the jury to convict the defendant of the crime of polygamy upon evidence satisfying them of the fact of defendant's marriage to a second wife in the territory of Utah, and also that the expression, "it being a continuous offense," was a direction for the jury to find the defendant guilty upon the theory that if he married in Utah and brought his polygamous wife with him into the territory of Arizona, he would thus renew his marriage contract in this territory, so as to make him liable to a prosecution for polygamy, the same as though the marriage had taken place

within this territory. This is the argument made. While the instruction may be somewhat ambiguous, we think the criticism made upon it unfair, and a forced one. The court in this instruction had reference to the question of unlawful cohabitation alone, and to the proof which was in the case showing the defendant guilty of that offense in Utah.

To the proof against the defendant under the third count, tending to prove him guilty of that particular crime, it *would* be no defense for him to say he had been guilty of the similar crime in Utah. The court did not intend to say, and did not say, that, if the defendant was actually married to his second wife in Utah, it would not be a defense to urge that fact in this prosecution, to the charge of polygamy. That this is so made clear from the balance of the charge, portions of which we quote. He says: "In this case the question of marriage is directly involved, and that, perhaps, is the most proper starting point for your consideration." Then follows a very full and accurate definition of marriage, and the proof necessary to be adduced in support thereof. After that the court proceeds: "The next proposition involved is, when must the defendant, and where must the defendant, have committed this offense, in order to make him liable under the indictment that is here brought against him? He must have committed the offense within the Third judicial district, consisting of the counties of Mohave, Yavapai, and Apache, of the territory of Arizona, since the passage of this law that has been read in your hearing." And again: "No matter what the defendant and his wives' relation may have been in Utah, in New Mexico, or anywhere else, if within the last two years, in the territory of Arizona, they renewed their agreement, and within the time, and within the district named, made this contract between themselves to live together as man and wife, and he introduced and recognized them as such, I charge you that he is guilty, as charged in the first count of the indictment, of the crime of polygamy. These facts, gentlemen, must be proven to you beyond a reasonable doubt. It is not for the court to say how they will be proven, but, as I said before, it must be from the evidence in the case."

This instruction repeats in other language the one just

quoted, and to which objection was especially made, on the ground alleged that it permitted the jury to convict of polygamy on evidence of a marriage in Utah. While the instruction might have been plainer, there is no sort of doubt as to what was meant; and that meaning, clear from the charge as a whole, is that, even though he did have sexual intercourse with his second wife in Utah before his marriage to her under a promise of agreement of marriage, and this promise or agreement resulted in a marriage in Arizona, under which he lives with her, he would be guilty. Whether they "renewed" their agreement to become man and wife is, of course, of no importance. Did they actually marry here in Arizona? That was the question, and that question was fully and fairly submitted. It will not do to take a single expression like this one,—"renewed their agreement,"—and consider it alone and by itself. The whole charge must be taken together. Looking at it in this way, we repeat, the charge was correct, as the quotations we make show, and the expressions referred to above could not have misled the jury. But the judge, even in this, states the meaning of the expressions, and it is that the defendant and his second wife must have, "in the district named, made this contract to live together as man and wife," and defendant must have treated her as such.

The court, at further length, at the request of counsel for the defendant, instructed the jury as follows: "Even though the defendant married a second wife while his first wife was living, and without having obtained a divorce from his said first wife, yet the jury cannot find the defendant guilty of polygamy, as charged in the first count of the indictment, unless you further find that said second marriage was contracted within the said Third judicial district of the territory of Arizona." In giving this instruction the court said: "I charge you, and I have charged you, that the offense must be committed in this judicial district, and within the time spoken of since the passage of this law." The court gave a further request asked by defendant's counsel, as follows: "To find the defendant guilty in the first count of the indictment, it is necessary that you must find, from the evidence, that the defendant entered into a contract of marriage with Eliza Ten-

ney, in the territory of Arizona, which would have been a valid marriage according to the laws of Arizona territory if the former marriage had not been subsisting." A further request on the part of the defendant was given as follows: "To find the defendant guilty under any of the counts in the indictments, the jury must find, from the evidence, that the offense charged was committed between the twenty-second day of March, 1882, and the finding and presentation of this indictment." Again, at the request of defendant's counsel, the judge instructed the jury as follows: "The jury are instructed that marriage, within the purview of law upon which the two first counts of the indictment were founded, is defined to be a contract between a man and woman, by which they agree, each with the other, that they will assume the marital relations, and live together as husband and wife." Again, the court, on the further request of counsel for the defendant, instructed the jury as follows: "The jury are instructed that evidence tending to show cohabitation prior to March 22, 1882, does not raise any presumption from which either marriage or cohabitation can be inferred in this case." The court, in giving this instruction, followed it up by a statement as follows: "I stated at the time that that evidence was offered, and drawn out by the defense, that it alone, even if you believed and are satisfied that they did cohabit and live together, would not, of itself, be sufficient to warrant a verdict of guilty. It was admitted, and only admitted, to be considered with the other facts and circumstances of the case bearing upon the relations existing between these parties, and to enable the jury to determine and decide on the other facts in the case that bear upon the question of reputation. I charge you that in a case of this kind, that, if the only evidence of the existence of a marriage relation between the parties was that of reputation, it would not be of itself sufficient, but it is competent evidence to consider, in connection with the other facts in the case, to enable you to arrive at the verdict."

These rather extended quotations from the charge of the district judge to the jury are made because of the able and earnest argument of counsel in behalf of the defense, that

the instructions left the- jury at liberty to convict the defendant of the crime of polygamy upon proof of a claimed marriage in the territory of Utah, and upon proof of unlawful cohabitation alone, and without proof of marriage here. These quotations show the argument has no basis in fact to rest upon. From the whole charge, taken together, we are satisfied that the jury could not have misunderstood the issues that were submitted to them, and that, before they could possibly convict the defendant of the crime of polygamy under the first count of the indictment, they must be satisfied that the marriage with Ann Eliza was entered into within the Third judicial district of the territory of Arizona. Indeed, there was no proof in the case from which it could be seriously urged that the defendant was married to Ann Eliza in Utah. There seems to have been no statement made by him of sufficient definiteness to show such marriage. In this regard the case is different from his statements as to his marriage in Arizona. These were distinctly and deliberately made, and, in connection with the proof of cohabitation, were sufficient evidence of marriage in Arizona.

6. Noticing the further objection made to the instruction, that too harshly criticised the offense of polygamy and bigamy, we refer to a somewhat similar instruction, and in a similar case, in *Reynolds* v. *United States*, 98 U. S. 145, and which was held · proper by the supreme court of the United States. There the instruction, speaking of the offenses named in this law, was as follows: "I think it not improper, in the discharge of your duties in this case, that you should consider what are to be the consequences to the innocent victims of this delusion. As this contest goes on they multiply, and there are pure-minded women, and there are innocent children, innocent in sense, even beyond the degree of the innocence of childhood itself,—these are to be the sufferers; and as jurors fail to do their duty, and as these cases come up in the territory of Utah, just so do these victims multiply, and spread themselves over the land."

Before leaving this branch of the case, and in connection with the objections considered, we call attention to one or two facts of importance. We are not asked to reverse this

judgment upon the ground that there was not proof sufficient to go to the jury, and upon which they might fairly and honestly have found the defendant guilty of polygamy because of having married the said Ann Eliza in the territory of Arizona, and at such time as to render him liable to a prosecution under the provisions of the Edmunds law. No argument is addressed to us on that point, nor is any such claim made; neither could such a position be contended for, in view of the testimony in the case. We are satisfied, therefore, that the jury must have understood that they must find that there was a marriage between the defendant and Ann Eliza, and that such marriage took place at the time named in the indictment, and within the territory of Arizona. Nor is there any chance to say that the case was not fairly submitted to the jury by the court. At the request of counsel for the defendant the court instructed the jury "that this is a criminal prosecution, and the defendant is presumed to be innocent, and it devolves upon the prosecution to prove his guilt beyond a reasonable doubt; and the fact that the defendant has produced no witnesses to testify in his behalf should not be considered by the jury in deciding the case, but such decision must be based entirely upon the evidence before them." Again, in response to a further request from counsel for the defendant, the court said to the jury: "The law presumes the defendant innocent of the crime of which he is charged until he is proven guilty beyond a reasonable doubt, by competent evidence, and, if the evidence in this cause leaves upon the minds of the jury any reasonable doubt of the defendant's guilt, the law makes it your duty to acquit him." There are other portions of the charge which repeat, at very great length, and over and over again, the caution that the jury must not convict upon any other than such testimony as would satisfy them of the guilt of the defendant beyond a reasonable doubt, and what was meant by this expression was also explained to the jury. In conclusion the court explained the charge that was made in the various counts, so that the jury must have understood perfectly the offense named in each count, and what proof would be necessary to sustain it, and what facts must be found in order to convict.

7. It remains to notice such other objections as were urged against the charge, mainly as to the *effect* of the principles announced therein. It is said in this regard that the defendant could not possibly have married Ann Eliza in Arizona, in 1883, as he had married her long before in Utah. The error of this reasoning is that the facts do not warrant any such conclusion. We concede that if the defendant was married to Ann Eliza in Utah at the time it was claimed he had sexual relations with her there, and that such marital relation continued uninterruptedly up to the time of his indictment, he could not have been convicted in this case of the crime of polygamy. Under the statute of limitations this would be so, if for no other reason; but there is no proof of any such marriage, not even from the defendant himself, who did not see fit to go upon the stand to give testimony as to such marriage, or any other facts. Besides, the verdict of the jury is against this theory. There is some proof, undoubtedly, that the defendant had sexual relations with said Ann Eliza in Utah; but, in the absence of proof of even a polygamous marriage between them, and in the face of the fact established, and indeed admitted, that he was already married to one wife, and living with her, we must assume that his relations with Ann Eliza in Utah were those of an improper and meretricious sexual intimacy, rather than marriage. It is probable that these relations were under a promise of marriage some time in the future. That this intimacy subsequently, and in March, 1883, resulted in a polygamous marriage in Arizona,—and this is the effect of the admissions of the defendant, proven in the case, and other evidence,—could not have the effect of making a marriage between them in Utah. Under such circumstances, his first wife still being alive, he would be liable to a prosecution for polygamy in this territory. In such a prosecution, as was said by the district judge, he cannot be heard to say that he had improper relations with the same woman prior to such marriage, and elsewhere. The jury have found in this case, as we have heretofore said, that the marriage took place in Arizona, and not in Utah, and there was proof upon which they could so find; and they were distinctly told they must so find in order to convict under

the first count. Is not the case on this branch perfectly clear, in the absence of improper testimony upon which such finding could rest?

8. It is further objected that the marriage could not have taken place here or elsewhere, between the defendant and Ann Eliza, because both these parties knew that the defendant's first wife was still living and cohabiting with him. Upon this point we agree with counsel that under no definition of marriage, as understood by Christian people,—a union of one man with one woman, for life,—can these polygamous unions be looked upon as marriage. But counsel lose sight of the fact, which caused the enactment of the law in question, that there are such arrangements and unions, under which a man takes to himself two, three, or more women, and lives with them under a claim of marriage. These arrangements or unions are what the Edmunds law aims to punish and suppress. This was the kind of marriage meant by the district judge in his instructions touching the relation contracted and entered into in Arizona between the defendant and Ann Eliza Tenney. Such, too, is our meaning when we speak of the marriage between these parties. It is not necessary in order to make out the offense, that the second marriage should be a valid one. Every bigamous or polygamous marriage is void, and it is the *entering into the void* marriage while a *valid* one is in existence that the law punishes. *Regina* v. *Brawn,* 1 Car. & K. 144. Neither has knowledge of the fact that a prior wife was living, anything to do with the question. That knowledge usually exists, and is one of the unfortunate consequences of the practice of polygamy. But for that reason shall the law be turned aside? Clearly not. It is an additional reason, upon the contrary, why it should inexorably punish.

We have now considered all the objections urged against the conviction of the defendant in this case, and our conclusion is that the conviction was right, and must be affirmed. It is ordered accordingly.

BARNES, J., concurs.

PORTER, J., (*dissenting.*) I dissent from the opinion of the

majority of the court, as I think the defendant should only have been convicted under the second count of the indictment, charging a violation of the third section of the Edmunds act.  The ground upon which I dissent is that the higher offense was shown to be barred by the statute of limitations.  It was abundantly proven that the defendant made such acknowledgment in Arizona of the two women being his wives as to constitute a marriage here, just the same as though two ceremonies had been performed; but that same proof, and by the same witnesses, showed that the same relations existed between the parties in Utah and in New Mexico at a time anterior to the open acknowledgments in this territory, and a sufficient time to make the offense barred by the statute of limitations.  My opinion is that from the time defendant first took on these marriage relations, and held both these women out as his wives, the statute began to run.  Suppose two ceremonies had been performed, either in Utah or in Arizona, could the defendant have been indicted after the statutory time had elapsed, though every day he declared them to the world to be his wives?  Is this a marriage every day, and can it be a continuing offense.  Emphatically, I say, "No."  In view of this condition of things, the Edmunds act provided that cohabitation with more than one woman without marriages should be punishable as a misdemeanor.  The opinion of the majority of the court states that the proof only indicated a meretricious connection in Utah and New Mexico.  I submit that the witnesses showed the same admissions, and the same general reputation of marriage and cohabiting, in each of the territories as in Arizona, and therefore I think it was as much a marriage there as here.  Prosecutions and convictions for unlawful cohabitation can be continuously made.