666 P.2d 1094

**The STATE of Arizona, Appellant,**

v.

**Jose Valente VILLARREAL, Appellee.**

**No. 2 CA–CR 2864.**

Court of Appeals of Arizona,
Division 2.

June 14, 1983.

Stephen D. Neely, Pima County Atty. by Michael P. Callahan, Tucson, for appellant.

Frederic J. Dardis, Pima County Public Defender by Jeffrey Schwartz, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

Appellee was convicted by a jury of attempted fraudulent scheme in violation of A.R.S. § 13–1001 and § 13–2310 and conspiracy to commit fraudulent scheme in violation of A.R.S. §§ 13–1003 and 13–2310.

The record shows that at the close of the prosecution's case and again when the defense rested, the defense counsel moved pursuant to Rule 20, Arizona Rules of Criminal Procedure, 17 A.R.S., for judgments of acquittal on both charges on the ground that the evidence was insufficient as a matter of law to warrant a conviction. The jury verdict was returned on July 13, 1982, and within ten days defense counsel renewed his motion for a judgment of acquittal on the ground previously asserted. On August 12, 1982, the defendant moved for a new trial. The trial court, after hearing arguments, granted defendant's motion for acquittal of attempted fraudulent scheme because the evidence did not show an overt act beyond preliminary arrangements and it felt that it erred in refusing to grant the defendant's Rule 20 motion at the end of the state's case. It also granted a new trial on the conspiracy to commit fraudulent scheme because the instructions given to the jury were such that they denied defendant a fair trial.

The state contends that the actions of the trial court were erroneous and that the jury verdicts should be reinstated. We agree.

The facts in this case are undisputed. Appellee's mother, Antonia Dallman, was the sole owner of a 1977 Datsun B–210 automobile. She had insured the car against theft with Bonneville Insurance Company through the local insurance agent, R.E. Bolt and Company. The policy expired on December 7, 1981.

In early November 1981 appellee took the car on a trip to Phoenix and ruined its engine. He brought it back to Tucson and parked it in front of his residence. He then found the auto insurance papers and telephoned the insurance representative R.E. Bolt and Company. Appellee told Bolt that it was his mother who was driving the car when the engine blew and inquired whether the engine was covered under the policy. He was informed that the coverage did not extend to that type of mechanical failure.

On November 19, 1981, Stanley Barr, owner of the Superior Paint and Body Shop, received a phone call from appellee who told him he had a 1977 Datsun B–210 automobile with a blown engine and that he wanted to sell the parts from the front end of the vehicle for $175. After some discussion, appellee said he would sell the rest of the front end for $275. Barr figured that something was wrong since if he had to buy the entire front from a salvage company, it would cost anywhere from $1,000 to $1,200. Barr contacted his friend, Detective Filippeli of the Tucson Police Department. The vehicle had not been reported stolen, so

Filippeli advised Barr to go see the vehicle and find out to whom it belonged.

After inspecting the vehicle the next day, Barr spoke to appellee again by telephone. Appellee explained that the car belonged to himself and his wife, but that he could not convey the title because he was still making payments on the car. Barr asked what he planned to do with the rest of the car, and appellee said, "It was going to walk off," which meant that it was just going to disappear. Appellee said that when the car was disposed of, he was going to report it as stolen to his insurance company. Barr offered to buy the car as a whole, and appellee agreed to take $500. Detective Filippeli agreed to furnish $500 in cash so Barr could go through with the deal.

On November 21, 1981, appellee towed the vehicle to the paint and body shop. During a conversation which Barr secretly recorded, and which was admitted into evidence, appellee stated again he was going to report the vehicle to his insurance company as stolen, and arranged with Barr to get rid of the car before the insurance expired on December 7, 1981. Appellee left with the $500 and was arrested immediately thereafter when he used some of the funds to make a minor purchase at a convenience store. Detective Filippeli explained that he did not wait until appellee filed a false claim to arrest him because he did not want Villarreal to spend $500 of the state's money.

The trial court's granting of the post-verdict motion for acquittal was contrary to *State ex rel. Hyder v. Superior Court in and for the County of Maricopa,* 128 Ariz. 216, 624 P.2d 1264 (1981). At this point the judge may only redetermine the quantum of evidence if he is satisfied that he erred previously in considering *improper evidence.* Such is not the case here. The question of what constitutes "... any step

in a course of conduct planned to culminate in commission of an offense," A.R.S. § 13–1001(A)(2), under the particular facts of the case is clearly for the trier of fact. See *State v. Workman,* 90 Wash.2d 443, 584 P.2d 382 (1978).

A motion for a new trial must be made no later than ten days after the verdict has been rendered. Rule 24.1, Arizona Rules of Criminal Procedure, 17 A.R.S. If it is not, the trial court has no jurisdiction to grant a new trial. *State v. Hickle,* 129 Ariz. 330, 631 P.2d 112 (1981). The motion for a new trial here was not filed within ten days following the jury verdict. The trial court lacked jurisdiction in this case to grant the new trial on the conspiracy charges. Assuming arguendo that a timely motion had been made, the trial court abused its discretion in granting it since the instructions on conspiracy were not confusing nor misleading and were correct.[1]

The orders of the trial court setting aside the verdict of guilty on the attempt charge, directing a verdict of acquittal on the attempt charge, and granting a new trial on the conspiracy charge are vacated and set aside. The jury's guilty verdict on each charge is reinstated and the case is remanded for further proceedings consistent with this opinion.

HATHAWAY and BIRDSALL, JJ., concur.

---

1. The conspiracy section of our new criminal code adopts the "unilateral" concept in place of the traditional "bilateral concept." See *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981). Thus a person can be convicted of a conspiracy if the person with whom he conspired only feigned acquiescence in the plan. See also *Garcia v. State,* 394 N.E.2d 106 (Ind.1979); *State v. St. Christopher,* 305 Minn. 226, 232 N.W.2d 798 (1975); *State v. John,* 213 Neb. 76, 328 N.W.2d 181 (1982); *State .v. Marian,* 62 Ohio St.2d 250, 16 Ohio Op.3d 284, 405 N.E.2d 267 (1980).