199 P.3d 663

STATE of Arizona, Appellee,

v.

Kelly FISCHER, Appellant.

No. 1 CA–CR 06–0682.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 5, 2008.

As Amended Aug. 6, 2008.

Review Denied Dec. 4, 2008.

**410**

Terry Goddard, Attorney General by Kent Cattani, Chief Counsel, and Randall M. Howe, Former Chief Counsel, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

David Goldberg, Flagstaff, Attorney for Appellant.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Kelly Fischer (Defendant) appeals from his convictions and resulting sentences for sexual conduct with a minor and conspiracy to commit sexual conduct with a minor, each a class 6 undesignated offense. For reasons that follow, we affirm.

## ISSUES PRESENTED

¶ 2 Defendant raises five issues:

1. Whether his convictions violate the right to free exercise of religion under the First and Fourteenth Amendments to the United States Constitution.

2. Whether his convictions violate the right to substantive due process under the Fourteenth Amendment.

3. Whether the trial court erred in ruling that the statutory "spouse" defense was not available.

4. Whether the trial court erred by admitting hearsay testimony.

5. Whether there was sufficient evidence to support the convictions.

## FACTUAL AND PROCEDURAL HISTORY[1]

¶ 3 Defendant is a member of the Fundamentalist Church of Jesus Christ of Latter–Day Saints (FLDS Church) and lived with his wife Alison in Colorado City from 1997 to 2005. Although polygamy or "plural marriage" is prohibited in Arizona, the practice remains a tenet of the FLDS Church. In 1997 or 1998, Defendant took Lujean as a plural wife, and she moved in with Defendant and his legal wife. J.S., Lujean's thirteen- or fourteen-year old daughter from a prior marriage, also moved into the home with her mother. Defendant later accepted J.S. as another of his plural wives. On August 31, 2001, at the age of seventeen, J.S. gave birth to a baby girl. The birth certificate for the child listed Defendant as the father.

¶ 4 On May 26, 2005, the Mohave County grand jury indicted Defendant on one count of sexual conduct with a minor for having sexual intercourse with J.S. between October 1, 2000, and March 1, 2001; and one count of conspiracy to commit sexual conduct with a minor between July 12, 1999, and March 1, 2001, for conspiring with another to engage in sexual conduct with J.S. while she was under eighteen years of age. Prior to trial, Defendant moved to dismiss the prosecution on grounds that it violated his rights to free exercise of religion and personal liberty and because the statutory "spouse" defense was unconstitutionally vague. *See* Arizona Revised Statutes ("A.R.S.") § 13–1407(D) (Supp.2007).[2] Defendant also filed several motions including a motion in limine seeking to include evidence of FLDS history, culture and practices. At the argument on the motion the State maintained that such evidence was irrelevant to the charges that Defendant faced, and Defendant argued that he was "simply seeking ... to introduce [such evi-

---

1. "We view the facts in the light most favorable to sustaining the superior court's findings." *State v. Vaughn*, 217 Ariz. 518, 519 n. 2, ¶ 3, 176 P.3d 716, 717 n. 2 (App.2008).

2. We cite to the current version of the statute when there have been no material changes.

dence] ... so that the jury will have an appreciation for why certain fact patterns have arisen...." The superior court denied all of Defendant's motions but granted his motion in limine to introduce evidence of FLDS practice.[3]

¶ 5 Defendant then sought to preclude evidence of polygamy by another motion in limine arguing that no elements of the charges required proof of Defendant's religion and the admission of such evidence would be highly prejudicial. After oral argument, the court denied Defendant's motion in limine and reserved the right to restrict any evidence regarding polygamy. The superior court opined that the only evidence that would be necessary as far as Defendant's religion and polygamist practices would relate to "the conspiracy and the likelihood that the Defendant would engage in sex in [Defendant's] home in the community with a young underaged girl because this was acceptable under their religious beliefs ... those are two things that I can think of specifically that I would allow the State to pursue."

¶ 6 The jury convicted Defendant on both counts as charged. The superior court suspended sentence on both counts and placed Defendant on probation for a total of three years with the condition that he serve a forty-five day jail term.

¶ 7 Defendant filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031, –4033(A)(1) (2001).

## DISCUSSION

### 1. Free Exercise of Religion Claim

■■ ¶ 8 Defendant argues that his prosecution for sexual conduct with J.S. violates his right to religious freedom under the First and Fourteenth Amendments. In particular,

he challenges the provision in the Arizona Constitution prohibiting polygamy or plural marriage.[4] Defendant contends that this provision interferes with the exercise of his religious belief in plural marriage. Specifically, he argues if he had been able to enter into a legal plural marriage with J.S., the charged conduct would be immunized pursuant to A.R.S. § 13–1407(D), which provides "[i]t is a defense to a prosecution pursuant to § 13–1404 or 13–1405 that the person was the spouse of the other person at the time of commission of the act." Thus, Defendant argues that it was an error for the superior court to deny his use of the affirmative defense—that J.S. was his "spouse"—resulting from their "celestial marriage." We review issues of constitutional law de novo. *State v. McGill*, 213 Ariz. 147, 159, ¶ 53, 140 P.3d 930, 942 (2006). For the reasons stated below, we disagree with Defendant.

¶ 9 Before discussing Defendant's constitutional challenge to the polygamy provision in the Arizona Constitution, we note that Defendant did not unequivocally assert that but for the antipolygamy law he would have lawfully married J.S. Rather, Defendant merely argued below that a "celestial marriage" should be recognized under the statutory definition of "spouse." *See* A.R.S. §§ 13–1407(D), –1401(4) (2001) (legally married and cohabitating), 25–111(B)(1) (2007) (marriage not valid without license); –102(C) (2007) (no marriage shall take place if prohibited by law). Accordingly, the constitutional challenge may not have been preserved because Defendant did not show he would have had a statutory defense but for the prohibition of polygamy.

■■ ¶ 10 The Free Exercise Clause of the First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. This

---

**3.** At argument on the motion the superior court ruled that "the Court will be fairly quick to step in and uphold any objections of relevance if they go beyond some of the limited areas that were discussed today." The superior court stated that it thought much of the church teachings would be irrelevant and would not provide a defense in this case, but that the court did think "some of the cultural aspects of the church are going to be relevant to explain just the relationships of how these crimes are alleged to have been committed."

**4.** "Polygamous or plural marriages, or polygamous cohabitation, are forever prohibited within this State." Ariz. Const. art. 20, Par. 2.

provision has been made applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The free exercise of religion encompasses two concepts—"the right to believe and profess whatever religious doctrine one desires" and the right to "the performance of (or abstention from) physical acts .... for religious reasons ...." *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (*Smith II* ). "The first is absolute but, in the nature of things, the second cannot be." *Cantwell,* 310 U.S. at 303, 60 S.Ct. 900. Thus, the government is prohibited from any regulation of religious beliefs as such, and the government may not penalize or discriminate against individuals or groups because of their religious views. *Smith II,* 494 U.S. at 877–78, 110 S.Ct. 1595; *Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In contrast, the right to engage in actions or conduct prompted by religious beliefs or principles " 'is not totally free from legislative restrictions.' " *Sherbert,* 374 U.S. at 403, 83 S.Ct. 1790 (quoting *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)). "Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection." *Cantwell,* 310 U.S. at 304, 60 S.Ct. 900.

¶ 11 The United States Supreme Court has declined to extend the protection of the Free Exercise Clause of the First Amendment to the practice of polygamy. In *Reynolds v. United States,* 98 U.S. 145, 98 U.S. 145, 25 L.Ed. 244 (1878), the Court upheld the federal bigamy conviction of a member of the Church of Jesus Christ of Latter–Day Saints for practicing polygamy in accord with religious beliefs. The Court traced the genesis of the First Amendment and the historical treatment of polygamy and held that the practice of polygamy was not protected by the First Amendment. *Reynolds,* 98 U.S. at 162–66. In reaching this result, the Court distinguished between belief and conduct and concluded that "Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in viola-

tion of social duties or subversive of good order." *Id.* at 164. The Court explained:

> Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices.
>
> .... Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.

*Id.* at 166–67.

¶ 12 While conceding that *Reynolds* has never been explicitly overruled, Defendant argues it should not be binding because it cannot withstand modern constitutional analysis. It is true that *Reynolds* was decided more than a century ago, nevertheless, despite subsequent decisions modifying the strict belief/conduct distinction adopted in *Reynolds,* "the underlying reasoning of *Reynolds* remains valid." *Barlow v. Blackburn,* 165 Ariz. 351, 356, 798 P.2d 1360, 1365 (App.1990). The Supreme Court has not moved away from its holding on the issue of polygamy, and the Court has continued to refer to *Reynolds* approvingly for the proposition that plural marriages have no claim to First Amendment protection. *See, e.g., Employment Div., Dep't of Human Res. of Oregon v. Smith,* 485 U.S. 660, 671, 108 S.Ct. 1444, 99 L.Ed.2d 753 (1988) (*Smith I* ) (noting "bigamy may be forbidden, even when the practice is dictated by sincere religious convictions"); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 68 n. 15, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) ("Statutes making bigamy a crime surely cut into an individual's freedom to associate, but few today seriously claim such statutes violate the First Amendment or any other constitutional provision."). State and lower federal courts as well as commentators have re-affirmed the continued validity of *Reynolds. See Utah v. Holm,* 137 P.3d 726, 741–42, ¶¶ 50–52 (Utah 2006) (rejecting the argument that *Reynolds* was antiquated and inapplicable and stating that *"Reynolds,* despite its age, has never been overruled by the United States Supreme Court and, in fact, has been cited by the

Court with approval in several modern free exercise cases, signaling its continuing vitality"); *Utah v. Green,* 99 P.3d 820, 825–26, ¶¶ 19–20 (Utah 2004) ("*Reynolds* was decided over a century ago and may be antiquated.... [N]evertheless, the Supreme Court has never explicitly overruled the decision.") (citing *United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); *Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Cleveland v. United States,* 329 U.S. 14, 20, 67 S.Ct. 13, 91 L.Ed. 12 (1946); *Potter v. Murray City,* 760 F.2d 1065, 1066–70 (10th Cir.1985)); *see also* Michael G. Myers, *Polygamist Eye for the Monogamist Guy: Homosexual Sodomy ... Gay Marriage ... Is Polygamy Next?,* 42 Hous. L.Rev. 1451, 1468 (2006) (hereinafter "Myers") ("[T]he Supreme Court has not overturned *Reynolds,* and thus, the decision remains good law....").

¶ 13 Defendant relies on *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), and *Yoder,* as support for his argument that *Reynolds* has been impliedly overruled. In both decisions, however, the Supreme Court cited *Reynolds* favorably to note the limits of First Amendment protection. *See City of Hialeah,* 508 U.S. at 535, 113 S.Ct. 2217; *Yoder,* 406 U.S. at 220, 92 S.Ct. 1526. Hence, neither can be viewed as calling into question the continued validity of *Reynolds.*

¶ 14 In fact, the Supreme Court has now fully returned to the *Reynolds* approach and its clear conduct/belief distinction with respect to when a law violates the right of free exercise under the First Amendment. In *Smith II,* except in limited circumstances inapplicable to this case, the Court abandoned its efforts in post-*Reynolds* decisions to balance the right of free exercise against governmental regulation of conduct under the "compelling interest" test. 494 U.S. at 888–89, 110 S.Ct. 1595. Instead, the Court held that the First Amendment does not prohibit governments from burdening religious practices through neutral, generally applicable laws. *Id.* Reprising the theme underlying the decision in *Reynolds,* the Court stated: "To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling'— permitting him, by virtue of his beliefs, 'to become a law unto himself,' contradicts both constitutional tradition and common sense." *Id.* at 885, 110 S.Ct. 1595 (quoting *Reynolds,* 98 U.S. at 167).

¶ 15 Defendant also claims that the Arizona polygamy prohibition is not a neutral law of general applicability because it directly targets the FLDS Church's practice of polygamy.[5] Contrary to Defendant's contention, the challenged provision is both facially neutral and non-discriminatory in effect. Article 20, Par. 2 of the Arizona Constitution reads: "Polygamous or plural marriages, or polygamous cohabitation, are forever prohibited within this State." Unlike the ordinance prohibiting animal sacrifice condemned in *City of Hialeah,* 508 U.S. at 534, 113 S.Ct. 2217, there is no "religious gerrymandering" in its operation. In *City of Hialeah,* the law punished conduct that was for the purpose of practicing the religion of Santeria while exempting almost all similar secular conduct. 508 U.S. at 543–45, 113 S.Ct. 2217. However, the Arizona Constitution's provision prohibits the recognition of polygamy or plural marriage by the State under all circumstances without exception. Ariz. Const. art. 20, Par. 2; *see also United States v. Tenney,* 2 Ariz. 127, 142, 11 P. 472, 479 (1886) ("Every bigamous or polygamous marriage is void...."). [6] Mere adverse impact does not support a finding of impermissible targeting when the social harm is "a legitimate concern of government for reasons quite apart from discrimination." *City of Hialeah,* 508 U.S. at

---

**5.** "[P]olygamy [has been] actually a common theme found in Christianity, Judaism, Islam, and other religions." Myers, 42 Hous. L.Rev. at 1458–59. "There are other religions, including Islam and Hinduism, under which polygamy is merely an acceptable practice." Keith Jaasma, *The Religious Freedom Restoration Act: Responding to Smith; Reconsidering Reynolds,* 16 Whitti-er L.Rev. 211, 286 (1995) (citing Jeremy M. Miller, *A Critique of the Reynolds Decision,* 11 W. St. U.L.Rev. 165, 179 (1984)).

**6.** "[B]igamy is a crime in every state." *Green,* 99 P.3d at 828 n. 13, ¶ 31; Myers, 42 Hous. L.Rev. at 1455 n. 19 (listing applicable statutes).

535, 113 S.Ct. 2217 (citing *Reynolds* for polygamy as an example of a social harm that the government may properly target irrespective of adverse impact on religious practice); *see Smith II*, 494 U.S. at 886 n. 3, 110 S.Ct. 1595 (neutral law of general applicability need not be justified by a compelling government interest even if it incidentally burdens a particular religious practice).

¶ 16 Finally, "[w]e cannot ignore a Supreme Court decision interpreting federal law unless the Court expressly overrules or casts cognizable doubt on that decision." *State v. Ring*, 204 Ariz. 534, 557, ¶ 61, 65 P.3d 915, 938 (2003). *Reynolds* remains good law and we are therefore compelled to follow it. *Barlow*, 165 Ariz. at 356, 798 P.2d at 1365; *Holm*, 137 P.3d at 742, ¶ 52; *Green*, 99 P.3d at 825–26, ¶ 19. Accordingly, we hold that *Reynolds* is dispositive of Defendant's First Amendment challenge.

## 2. Substantive Due Process Claim

█ ¶ 17 We further reject Defendant's claim that his prosecution violates his right to substantive due process under the Fourteenth Amendment.[7] Relying primarily on *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), Defendant argues that his conduct with J.S. falls within the fundamental liberty interests protected from governmental intrusion by the Fourteenth Amendment because it involves a private matter of familial relationship "with a consenting young woman."

¶ 18 In *Lawrence*, the United States Supreme Court struck down a Texas statute prohibiting certain consensual sexual activity by members of the same sex. 539 U.S. at 578, 123 S.Ct. 2472. However, the Supreme Court stopped short of declaring that this liberty interest was a fundamental right. *See id.* at 572, 578, 123 S.Ct. 2472 (applying a rational basis test rather than the strict scrutiny test for fundamental rights); *see also id.* at 594, 123 S.Ct. 2472 (Scalia, J., dissenting) (noting that majority did not identify right as fundamental). The Supreme Court instead determined that the Texas statute prohibiting same-sex consensual sexual practices "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578, 123 S.Ct. 2472.

¶ 19 Defendant's reliance on *Lawrence* is misplaced. The Court clearly limited its holding in *Lawrence* to sexual activity between consenting *adults*. In fact, the Court repeatedly referenced that petitioners were adults and expressly noted: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct[.]" *Id.; see Holm*, 137 P.3d at 743, ¶ 55 (In *Lawrence* "the [United States Supreme] Court went out of its way to exclude from protection conduct that causes injury to a person or abuse of an institution the law protects.") (internal quotations omitted); *see also* Marjorie A. Shields, Annotation, *Validity of Bigamy and Polygamy Statutes and Constitutional Provisions*, 22 A.L.R. 6th 1, § 10 (2007) (The Supreme Court went out of its way to limit the opinion in *Lawrence* to consenting adults.).[8]

¶ 20 In contrast to *Lawrence*, the crux of the charges against Defendant is the fact that J.S. is a minor. This court has long recognized "the right of the state in the area of sexual activity to regulate the wellbeing of children and protect them from potential harm...." *State v. Snyder*, 25 Ariz.App. 406, 407, 544 P.2d 230, 231 (1976). Minors need protection "because they are deemed too unsophisticated to protect themselves or to consent to sexual activity." *Pima County Juve-*

---

**7.** "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

**8.** We also note that in *Smith II*, the Court rejected the compelling state interest test outside the unemployment compensation field and held it would not apply to require exemptions for a generally applicable criminal law. 494 U.S. at 884, 110 S.Ct. 1595. In so holding, the Court expressly cited to *Reynolds* for support. While Congress attempted to supersede the rejection of the compelling state interest test as applied to general neutral state laws, the Court struck down that attempt as unconstitutional. *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (holding the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, et seq. unconstitutional).

*nile Appeal No. 74802-2*, 164 Ariz. 25, 32, 790 P.2d 723, 730 (1990), *abrogated on other grounds by State v. Getz*, 189 Ariz. 561, 944 P.2d 503 (1997). Given this strong interest of the state in protecting minors, the state may constitutionally prohibit sexual conduct with minors, regardless of any "consent" by the minor to such activity. *Snyder*, 25 Ariz. App. at 407, 544 P.2d at 231. Further, A.R.S. § 13-1405 (2001) is violated regardless of a minor's purported consent. *Id.* at 407-08, 544 P.2d at 231-32; *State v. Fristoe*, 135 Ariz. 25, 30, 658 P.2d 825, 830 (App.1982).

### 3. Statutory Defense Claim

¶ 21 "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405(A). Pursuant to A.R.S. § 13-1407(D), it is a defense to a prosecution for sexual conduct with a minor "that the person was the spouse of the other person at the time of commission of the act." Defendant argues that the superior court erred in depriving him of this statutory defense. The court ruled that it would not instruct the jury on the statutory "spouse" defense because whether J.S. was his spouse was not an issue in the case due to the lack of evidence of a valid marriage with J.S. We review this issue de novo as it involves statutory construction and a question of law. *State v. Stroud*, 209 Ariz. 410, 414, ¶ 18, 103 P.3d 912, 916 (2005).

¶ 22 Defendant contends the term "spouse" as used in A.R.S. § 13-1407(D) is vague and he therefore should have been permitted to assert the defense based on his "celestial marriage" to J.S. However, Defendant's argument is predicated upon a mistaken belief that the term "spouse" was left undefined by the legislature. For purposes of section 13-1407(D), "spouse" is unambiguously defined as "a person who is legally married and cohabitating." A.R.S. § 13-1401(4). Where language of a statute is plain on its face, we "give effect to that language and need not employ other rules of statutory construction."[9] *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997). J.S. and Defendant could not have been considered spouses in a valid marriage under A.R.S. § 25-102(C). Section 102(C) states that "[a] marriage shall not take place under this section if it is prohibited by the law relating to prohibited and void marriages." Polygamous marriages are void pursuant to Arizona Constitution Article 20, Par. 2; *Tenney*, 2 Ariz. at 142, 11 P. at 479.

¶ 23 A marriage contracted in Arizona is not valid in the absence of a marriage license. A.R.S. § 25-111(B)(1); *see also Moran v. Moran*, 188 Ariz. 139, 143, 933 P.2d 1207, 1211 (App.1996) (holding private marriage contract without marriage license not valid). Defendant acknowledges that his "celestial marriage" to J.S. did not comply with the civil requirements for a valid marriage under Arizona law.[10]

### 4. Hearsay Claim/Confrontation Clause Claim

#### i. Hearsay

¶ 24 Defendant contends that the superior court erred by admitting inadmissi-

---

9. Nor can Defendant successfully rely on the definition of "spouses" in A.R.S. § 13-3609(D)(3) (Supp.2007) to support his vagueness challenge. In 2004, the legislature enacted § 13-3609 to make child bigamy a separate crime. *See* 2004 Ariz. Sess. Laws, ch. 187, § 1 (2d Reg.Sess.). Pursuant to that statute, a person commits child bigamy if he knowingly "1. Is at least eighteen years of age, has a spouse and marries a child." Section 13-3609(A)(1). Pursuant to § 13-3609(D)(3), "For the purposes of this section: ... 3. 'Spouses' means two persons living together as husband and wife, including the assumption of those marital rights, duties and obligations that are usually manifested by married people, including but not necessarily dependent on sexual relations." While the definition of "spouses" under § 13-3609 is broader, it is limited expressly to that statute, thus reflecting the

legislature's intent to broadly protect children from sexual abuse by criminalizing child bigamy for a wider range of persons than A.R.S. § 13-1405. Moreover, Defendant cannot successfully argue he was misled by the broader definition of "spouses" under § 13-3609 because that law was enacted in 2004, after the events for which he was tried in this case under § 13-1405.

10. Indeed, Defendant contended in his motion in limine regarding FLDS custom and practice that he cannot be charged with bigamy because he only had one licensed marriage and the marriage with J.S. was merely celestial and therefore not in violation of the antipolygamy provision in the Arizona Constitution. Defendant, of course, was not charged with bigamy.

ble hearsay dealing with alleged practices of the FLDS Church. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion and will reverse such a ruling only upon a finding of clear prejudice. *State v. Ayala,* 178 Ariz. 385, 387, 873 P.2d 1307, 1309 (App.1994).

¶ 25 The superior court overruled Defendant's hearsay objections on the grounds the testimony was not hearsay, because each of the statements for which objections were lodged were not being offered for their truth. *See* Ariz. R. Evid. 801(c).

¶ 26 Hearsay evidence is a statement, other than one made by a declarant testifying at trial, that is "offered into evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). Hearsay is generally inadmissible at trial, except as authorized "by applicable constitutional provisions, statutes, or rules." Ariz. R. Evid. 802.

¶ 27 We find no reversible error in admitting the objected-to testimony for several reasons. To understand these holdings, we must place the testimony in context. The State began its case-in-chief with testimony from a former member of the FLDS Church about the church's policy concerning polygamy and sealing marriages with underage girls. Without any objection from Defendant, the witness explained that the FLDS Church encourages polygamy, that Leroy Johnson, who was the church "prophet" at the time, had encouraged the witness to enter into a polygamous marriage, had selected the woman who would be his "wife" and had performed the marriage. That witness also testified without objection that later he had been expelled from the church.

¶ 28 At that point, Defendant raised a continuing objection and the superior court explained that at the appropriate time he could place the exact basis of that objection on the record. However, before doing so, the questioning of the witness continued and Defendant chose to object to only several portions of this testimony as hearsay. The witness then testified, *without* any hearsay objection [11] that:

• Rulon Jeffs took over as the "prophet" in 1986 and arranged the witness' second polygamous marriage in the same manner as his first polygamous marriage.

• That the witness could have had sex with all three of his "wives," but that if he had sought another plural marriage on his own, it would have cost him his standing in the church because a marriage was considered a revelation from heaven to the "prophet".

• Another woman could not move into his house with him in 1996 nor could he date another woman without the prophet's approval.

• Beginning in approximately 1998, Warren Jeffs began arranging the "celestial" marriages and doing the sealing ceremonies of those marriages.

• That the prophet selected young women to enter into these polygamous marriages, that this happened to one of his minor daughters but she refused to enter into the marriage and left the church. Generally, however, if a girl refused to enter into the arranged marriage, she would receive pressure from parents and peers and if she still resisted "it would lead to a condition where they would leave—leave the community or be sent away."

• From 1998–2000, young girls were taught that their role was to get married and have children.

• From 1998 on, minor girls who are members of the church were told that if they were excommunicated or kicked out of the church, they were considered to have died and would go to hell and might lose their children in custody battles. Moreover, if young girls or boys were to testify in cases, against church members, they would be branded apostates.

¶ 29 The witness also testified to the following facts over Defendant's hearsay objection:

• The witness stopped in to see the Prophet Johnson and the Prophet Johnson "made

---

**11.** Defendant objected to some of the following testimony, but only on foundation and relevancy, not on hearsay grounds.

the statement the Lord wants to bless you with another lady."

• During the sealing ceremony with his third wife the Prophet Rulon Jeffs "read some scriptures relative to multiply and replenish the earth and he spoke a little bit about that." The witness testified that he understood the statement to mean having children.

• The witness learned that he had been excommunicated from the FLDS church after Sam Barlow called the witness' wives and told them that the witness "does not hold the priesthood. Holy Prophet has said [he] does not and that if you ladies stay with him you will go down with the wicked."

• Sometime in this same time period, Sam Barlow praised young girls involved in a court case in Phoenix for not testifying and not turning "traitor."

¶ 30 Defendant then placed his "continuing" objection on the record. He stated that

in regard to the hearsay objection or foundational objection that it became clear there was a confrontation objection. The Court indicated that it was not hearsay because it was not being offered for its truth. I could see no exception that would be applicable and that's exactly why the State is offering it for. There's no relevance for offering it and so I believe that the statements that I was continuing to make a record on were inadmissible hearsay, lack foundation and further deny my right to confrontation as to the person offering the statement.

¶ 31 We find no error for several reasons. First, the above-described testimony to which Defendant did *not* object based on hearsay grounds, *supra*, ¶¶ 27–28, was not hearsay. The witness was merely giving his observations about the FLDS Church and what he saw occur, not testifying as to out-of-court declarations by third persons. That is not hearsay. *State v. Hampton*, 213 Ariz. 167, 179 n. 12, ¶ 48, 140 P.3d 950, 962 n. 12 (2006).

¶ 32 Second, to the extent the witness' testimony to which Defendant did *not* object based on hearsay might have been hearsay, the objection was waived. "[A] general objection is insufficient to preserve an issue for appeal. And an objection on one ground does not preserve the issue on another ground." *State v. Lopez*, 217 Ariz. 433, 434, ¶ 4, 175 P.3d 682, 683 (App.2008) (internal citations omitted). As made clear by the record, when Defendant wanted to object to testimony as hearsay, he expressly made his record on that basis and then explained his continuing objection. He did not object on hearsay grounds to most of the above testimony.

¶ 33 Third, we conclude that several of the four statements objected to as hearsay were not hearsay. "Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay". *State v. Rogovich*, 188 Ariz. 38, 42, 932 P.2d 794, 798 (1997). Consequently, a hearsay objection is without merit when the evidence in question has been admitted "solely for the purpose of proving that certain words were spoken." *State v. Nightwine*, 137 Ariz. 499, 502, 671 P.2d 1289, 1292 (App. 1983); *see also State v. Hernandez*, 170 Ariz. 301, 307, 823 P.2d 1309, 1315 (App.1991) (holding statements not hearsay where "they only showed how events unfolded"). Statements made as a command are not hearsay if they are not intended as an assertion. *See State v. Carrillo*, 156 Ariz. 120, 124, 750 P.2d 878, 882 (App.1987), *rev'd on other grounds*, 156 Ariz. 125, 750 P.2d 883 (1988). Thus, of the four statements to which the Defendant objected based on hearsay, *supra*, ¶ 29, the statement that the "prophet" told the witness that "the Lord wants to bless you with another lady," does not go to the truth of the matter asserted. Whether a higher power wanted anything could not possibly be hearsay because it was not a statement which could be proven as true or false. *Indianapolis Newspapers, Inc. v. Fields*, 254 Ind. 219, 259 N.E.2d 651, 674 (1970). The admission of the statement is simply for the purpose that the statement was made.[12]

---

12. Moreover, that statement was merely cumulative to earlier unobjected to testimony to the same point and thus its admission was not reversible error. *State v. Fulminante*, 161 Ariz.

¶ 34 Similarly, the statement that during one of the ceremonies the "prophet" "read some scriptures relative to multiply and replenish the earth and he spoke a little bit about that," was a command, not a statement of fact, and thus not hearsay. *Carrillo,* 156 Ariz. at 124, 750 P.2d at 882. The witness' statement that he interpreted that statement to mean to have children is not an out-of-court declaration by a third party and thus not hearsay by definition. Ariz. R. Evid. 801(c).

¶ 35 The testimony about how the church had taken action against the witness by removing him from the church was part of further testimony by the witness to explore whether the witness had any bias against the church and the prophet. Indeed, during that same segment of testimony, the witness stated that Warren Jeffs had taken away his wives and it led to a custody battle for the witness' children so he was not happy with Warren Jeffs.

¶ 36 Fourth, given the background testimony the State introduced without any objection, we find that admission of any of the statements objected to as hearsay or on other grounds, even if such admission was erroneous, was harmless error. *State v. Lacy,* 187 Ariz. 340, 349, 929 P.2d 1288, 1297 (1996) (error in admission of hearsay evidence requires reversal only if "reasonable probability" exists that "the verdict would have been different had the evidence not been admitted").

**ii. Confrontation Challenge**

 ¶ 37 Defendant additionally argues that the admission of the statements violates his right to confrontation under the Sixth and Fourteen Amendments. He concedes, however, that the statements are not "testimonial" as that term has been defined in case law. *See Crawford v. Washington,* 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Non-testimonial statements are not subject to a confrontation challenge. *Davis v. Washington,* 547 U.S. 813, 824–26, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Ro-*

*govich,* 188 Ariz. at 42, 932 P.2d at 798. *See also Hampton,* 213 Ariz. at 179 n. 12, ¶ 48, 140 P.3d at 962 n. 12 (testimony not testimonial hearsay when statements were made to the witness and not agents of the state and not statements declarants would reasonably expect to be used prosecutorially). Consequently, admission of the statements did not violate Defendant's right of confrontation.

**5. Sufficiency of Evidence Claim**

 ¶ 38 Finally, Defendant contends that the superior court erred in denying his motion pursuant to Rule 20, Arizona Rules of Criminal Procedure, for judgment of acquittal and Rule 24 motion for new trial based on insufficient evidence. We conduct a de novo review of the trial court's rulings, viewing the evidence in a light most favorable to upholding the verdicts. *State v. Bible,* 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993).

 ¶ 39 Our review is limited to whether substantial evidence exists to support the verdicts. *State v. Scott,* 177 Ariz. 131, 138, 865 P.2d 792, 799 (1993); *see also* Ariz. R.Crim. P. 20(a) (directing that the court shall enter judgment of acquittal "if there is no substantial evidence to warrant a conviction"). Substantial evidence is such proof that " 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.' " *State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). Thus, if reasonable minds could differ as to whether the evidence and all the inferences therefrom prove the offense, a motion for acquittal should not be granted. *Mathers,* 165 Ariz. at 66–67, 796 P.2d at 868–69.

237, 245–46, 778 P.2d 602, 610–11 (1988) (harmless error when inadmissible evidence cumula- tive to properly admitted evidence).

## A. Sexual Conduct with a Minor

¶ 40 "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse. with any person who is under eighteen years of age." A.R.S. § 13–1405(A). Defendant does not contest that the birth certificate identifying him as the father of the child born to J.S. when she was seventeen-years-old is sufficient to support a finding that he engaged in sexual intercourse with her while she was under the age of eighteen. Rather, his challenge to his conviction for this offense focuses on the issue of jurisdiction. Specifically, he argues that the State failed to meet its burden of proving that the conduct occurred in Arizona.

 ¶ 41 Arizona has jurisdiction to prosecute a defendant for an offense if any element of the offense occurs within the state. A.R.S. § 13–108(A) (2001). When jurisdictional facts are in dispute, they must be proven by the State beyond a reasonable doubt. *State v. Willoughby*, 181 Ariz. 530, 538, 892 P.2d 1319, 1327 (1995).

¶ 42 There was sufficient evidence to permit the jury to find beyond a reasonable doubt that Defendant committed the offense of sexual conduct with a minor in Arizona. The jury could infer from the evidence that Defendant took J.S. as one of his plural wives and that they lived together in his home in Arizona where his construction company was located during the period in which she became pregnant. Based on this evidence, it can reasonably be inferred that the act of sexual intercourse occurred in Arizona. While the evidence supporting this finding is admittedly circumstantial, "Arizona law makes no distinction between circumstantial and direct evidence." *State v. Stuard*, 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993). "Ev-

idence wholly circumstantial can support differing, yet reasonable inferences sufficient to defeat a motion for directed verdict." *State v. Anaya*, 165 Ariz. 535, 543, 799 P.2d 876, 884 (App.1990).

¶ 43 Defendant notes that there was testimony that he owns and operates a construction business and often left Arizona to work on jobs in neighboring states. There was, however, no evidence that he took his wives with him or that J.S. ever left Arizona during the time period at issue.[13] Moreover, the State is not required to disprove "every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence." *State v. Nash*, 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985). Accordingly, there was no error by the trial court in denying Defendant's motions for judgment of acquittal and new trial with respect to the offense of sexual conduct with a minor.

## B. Conspiracy

 ¶ 44 Defendant raises no issue regarding jurisdiction for the offense of conspiracy to commit sexual conduct with a minor. Instead, he maintains that the evidence fails to support a finding that he committed the offense. We disagree.

¶ 45 The offense of conspiracy is defined, in pertinent part, as follows:

A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense, except that an overt act shall not be required if the object of the conspiracy was to commit any felony upon the person

---

13. At oral argument, Defendant for the first time contended he had other homes in Utah and therefore there was insufficient proof the criminal conduct occurred in Arizona. The evidence of other homes is not in the record on appeal, nor did Defendant specifically argue or present such evidence to the jury that is apparent from the record. *State v. Schackart*, 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997) ("Because our court does not act as a fact-finder, we generally do not consider materials that are outside the record on appeal."); *Martin v. State*, 22 Ariz.

327, 328, 197 P. 578, 579 (1921) ("We cannot consider any evidence outside of that contained in the record on appeal."); *Benitez v. Indus. Comm'n*, 15 Ariz.App. 54, 55, 485 P.2d 1171, 1172 (1971) (sustaining objection to documents filed by petitioner on the date of oral argument to the extent that the evidence was outside the record on appeal). Furthermore, even if this had been presented to the superior court, it is not dispositive because the jury is free to draw all reasonable inferences from the evidence presented. *Bible*, 175 Ariz. at 602, 858 P.2d at 1205.

of another, or to commit an offense under § 13–1508 or 13–1704.

A.R.S. § 13–1003(A) (2001). The primary focus of the crime of conspiracy is the unlawful agreement itself and the threat to society that such collusion represents. *State v. Denman*, 186 Ariz. 390, 392, 923 P.2d 856, 858 (App.1996).

■ ¶ 46 The State presented no direct evidence of an agreement by Defendant with any specific person about engaging in sexual intercourse with J.S. when she was under the age of eighteen. This lack of direct evidence is neither unusual nor unexpected. "Criminal conspiracy need not be, and usually cannot be, proved by direct evidence. The common scheme or plan may be inferred from circumstantial evidence." *Arredondo*, 155 Ariz. at 317, 746 P.2d at 487. The agreement between conspirators may be proven by circumstantial evidence as well. *Willoughby*, 181 Ariz. at 540, 892 P.2d at 1329. As our supreme court observed:

'If [direct evidence of conspiracy] were necessary, it rarely, if ever, could be proved.... The effects and results of a conspiracy can be observed and proved, but rarely can one get a glimpse or make proof of the secret conferences which inaugurate it. For these manifest reasons proof of a criminal combination to do an unlawful act can rarely be made except by light reflected from its consequences or results.'

*State v. Avila*, 147 Ariz. 330, 336, 710 P.2d 440, 446 (1985) (quoting *State v. Estrada*, 27 Ariz.App. 38, 40, 550 P.2d 1080, 1082 (1976)).

¶ 47 The evidence pertaining to the conspiracy charge included testimony concerning the manner in which plural marriages are arranged and performed in the FLDS Church and how members are treated if they do not agree to the arranged marriages. This testimony established that the leader of the FLDS Church or "prophet" arranges all marriages within the church. Girls raised in the FLDS Church are taught that their function in society is to marry, have children, and serve as homemakers. Under FLDS doctrine, God reveals to the prophet which man

and girl should marry. The prophet then informs the man and girl of the revelation and marries them in a "sealing" ceremony. During the ceremony, the prophet reads scripture directing the man and girl "to multiply and replenish the earth," one of the prime directives of the FLDS Church.

¶ 48 As discussed above in regards to the charge of sexual conduct with a minor, the State further presented evidence from which the jury could infer that Defendant took J.S. as one of his plural wives and that he was the father of the child born to her when she was seventeen. There was also testimony that the parties to a marriage in the FLDS Church are asked to assent to the marriage before the prophet will proceed with the sealing ceremony. Given that the only marriages permitted in the FLDS Church are those arranged and performed by the "prophet" and that Defendant remained in good standing of the Church after marrying J.S., a jury could reasonably infer that Defendant agreed with the "prophet" to marry and engage in sexual intercourse with J.S. in accordance with the teachings of the FLDS Church. The fact that Defendant impregnated J.S. further bolsters this inference. *See Arredondo*, 155 Ariz. at 316, 746 P.2d at 486 ("Any action sufficient to corroborate the existence of an agreement to commit the unlawful act and to show that it is being put into effect supports a conspiracy conviction."). The evidence was sufficient to support the jury's finding of guilt on the charge of conspiracy.

## CONCLUSION

¶ 49 Finding no error, we affirm Defendant's convictions and sentences.[14]

CONCURRING: PATRICIA A. OROZCO and MAURICE PORTLEY, Judges.

14. Given the above evidence we do not decide whether the State could have argued or whether

the jury could have found a conspiracy based on conduct between Defendant and J.S. *See State v.* *BarraganSierra,* 219 Ariz. 276, 196 P.3d 879 (Ariz.App. 2008).