233 P.3d 1154

**The STATE of Arizona, Appellant,**

v.

**Randall D. WEST and Penny A. West, Appellees.**

No. 2 CA–CR 2008–0342.

Court of Appeals of Arizona, Division 2, Department A.

June 14, 2010.

Barbara LaWall, Pima County Attorney by Jacob R. Lines, Susan L. Eazer, Tucson, Attorneys for Appellant.

Robert J. Hirsh, Pima County Public Defender By Frank P. Leto, Tucson, Attorneys for Appellee Randall West.

Law Offices of Thomas Jacobs By Thomas F. Jacobs, Tucson, Attorneys for Appellee Penny West.

### OPINION

ESPINOSA, Presiding Judge.

¶ 1 After a jury found appellees Penny and Randall West guilty of child abuse, the trial court granted their post-verdict motions for judgment of acquittal pursuant to Rule 20, Ariz. R.Crim. P., which the State of Arizona now appeals. For the following reasons, we reverse.

### Factual Background and Procedural History

¶ 2 On August 24, 2005, sixteen-month-old Emily M. died from severe head trauma. At the time of her death, Emily was a foster child in the care of the Wests. The day before her death, Emily reportedly had exhibited good temperament, eaten well, and behaved normally. Randall saw no seizures and Penny said that Emily did not immediately fall asleep after being put to bed. On the morning of Emily's death, Penny called 9–1–1 and requested emergency assistance for Emily. Although the events preceding Penny's 9–1–1 call were disputed at trial, testimony established that the night before, Penny had gone to a school parent-teacher conference, leaving Randall alone with Emily and the other children.[1] Penny came home and later left again to pick up their son, M. Emily did not cry out or fuss during the night.

¶ 3 The next morning, Randall left the house at approximately 6:15 with M. in order to drop him off at school and continue on to work. During the next fifty minutes, Penny and Randall exchanged approximately nine telephone calls.[2] The contents of these calls were precluded at trial with the exception of two. One was reportedly a call from Randall and M. to Penny requesting that she settle a bet. The other was Penny's call to Randall about Emily's condition immediately before she called 9–1–1. The trial court prohibited the state from speculating about the contents of the other calls.

¶ 4 Penny's statements to police were introduced at trial. Penny had told an officer that on the morning of Emily's death, Penny got Emily and D. out of their beds and brought them downstairs around 7:00. Emily appeared normal at that time. Penny left her standing on the carpet in the living room and went into the kitchen. When she next looked at Emily, the child was bent forward at the waist with her hands and feet on the floor; she then fell over backwards as if she had fainted. Penny picked up Emily and saw that her eyes were "fluttering." She then removed Emily's clothes, put her in the sink, and splashed water on her to attempt to revive her. She made a brief telephone call to her husband and then called 9–1–1.

¶ 5 The responding paramedics found Emily breathing but unconscious. On the way to St. Joseph's Hospital, she stopped breathing and was intubated at the hospital. Emily then was transferred to Tucson Medical Center. When she arrived, the treating physician noted she had no gag reflex, unreactive pupils, and no response to stimuli. Despite emergency brain surgery, Emily died. The medical examiner concluded her death was "due to blunt impact or blunt impacts to the head with subdural hemorrhage."

---

1. The Wests have three children, C., K., and M. At the time of Emily's death, C. was seven, K. was ten, and M. was seventeen. The Wests also were caring for two other foster children at the time: D., who was twenty months old, and K., who was one month old.

2. Six of the calls were under one minute in length, including one that lasted for four seconds.

¶ 6 Penny and Randall were charged with child abuse under A.R.S. § 13–3623(A)(1). During the nineteen-day trial, numerous witnesses testified, including the Wests' children and a number of medical experts. Some of the testimony was inconsistent with Penny's and Randall's accounts of the events surrounding Emily's death. One of her treating physicians opined that the injury occurred within twelve to twenty-four hours of her arrival at the hospital, and that Emily likely would have experienced symptoms such as immediate loss of consciousness, decreased alertness, and impaired ability to wake up. The Wests each moved for a judgment of acquittal pursuant to Rule 20, at the close of the state's case and again at the close of evidence, which the trial court denied. The jury found Penny guilty of criminally negligent child abuse under circumstances likely to produce death or serious injury. It also found Randall guilty of reckless child abuse under circumstances not likely to produce death or serious injury.

¶ 7 After the jury rendered the verdicts, the Wests renewed their Rule 20 motions, arguing there was no substantial evidence to warrant their respective convictions. *See* Ariz. R.Crim. P. 20(b). After a hearing, the trial court granted the motions and set aside the jury verdicts, explaining that, although "a rational trier of fact could find beyond a reasonable doubt that the victim's injury was caused by an act of child abuse," there was "no substantial evidence proving whether it was both or only one defendant that did so" or "permitted the injury." The state timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4032(7).

## Discussion

¶ 8 We review the trial court's post-verdict order granting the Wests' motions for judgment of acquittal for an abuse of discretion. *State ex rel. Hyder v. Superior Court,* 128 Ariz. 216, 224, 624 P.2d 1264, 1273 (1981); *State v. Alvarado,* 219 Ariz. 540, ¶ 7, 200 P.3d 1037, 1039 (App.2008).[3] An abuse of discretion includes an error of law. *State v. Lychwick,* 222 Ariz. 604, ¶ 7, 218 P.3d 1061, 1063 (App.2009). Under the standard articulated in *Hyder,* once a jury has returned a guilty verdict, a trial court "may only redetermine the quantum of evidence if [it] is satisfied that [it] erred previously in considering improper evidence." 128 Ariz. at 224, 624 P.2d at 1272. Otherwise, "we must assume on review that [it] has disagreed with the jury's fact-finding." *Id.* And if that is the case, the court's ruling will be reversed and the jury's verdict reinstated. *See id.* at 224–25, 624 P.2d at 1272–73; *State v. Villarreal,* 136 Ariz. 485, 487, 666 P.2d 1094, 1096 (App. 1983); *State v. Paoletto,* 133 Ariz. 412, 416, 652 P.2d 151, 155 (App.1982).

¶ 9 Although the state relied on *Hyder* in the trial court, it did not do so in its briefs on appeal. Generally, an issue raised below but not on appeal is considered abandoned and therefore waived. *See State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."). Given the gravity of this case and because *Hyder* potentially is dispositive, this court requested and received supplemental briefing from the parties on, inter alia, the question of the state's abandonment of the issue, as well as its substantive merits.

3. Citing *State v. Cruz,* 218 Ariz. 149, 181 P.3d 196 (2008), and *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993), the state asserts our review is de novo. In *Cruz,* however, the defendant challenged the trial court's denial of his motion requesting that it find Rule 20 unconstitutional, 218 Ariz. 149, ¶ 37, 181 P.3d at 206, which is not an issue in this case. And in *Bible* our supreme court reviewed de novo the trial court's denial of a motion for judgment of acquittal. 175 Ariz. at 595, 858 P.2d at 1198; *see also State v. Fischer,* 219 Ariz. 408, ¶ 38, 199 P.3d 663, 673 (App.2008) (same). But in other decisions this court has applied an abuse-of-discretion standard in re-

viewing a trial court's denial of a Rule 20 motion. *See, e.g., State v. Cifelli,* 214 Ariz. 524, ¶ 11, 155 P.3d 363, 366 (App.2007); *State v. Hollenback,* 212 Ariz. 12, ¶ 3, 126 P.3d 159, 161 (App. 2005). In reviewing a trial court's grant of a Rule 20 motion, it appears the abuse-of-discretion standard also has been applied. *See Hyder,* 128 Ariz. at 224, 624 P.2d at 1273; *Alvarado,* 219 Ariz. 540, ¶ 7, 200 P.3d at 1039; *State v. Wilson,* 207 Ariz. 12, ¶ 11, 82 P.3d 797, 800 (App.2004). To the extent it is unclear which standard applies, we need not resolve that question because we would reach the same conclusion under either standard of review.

¶ 10 We have discretion to address a significant, albeit waived, issue on the merits. *See State v. Aleman*, 210 Ariz. 232, ¶ 24, 109 P.3d 571, 579 (App.2005) ("[W]aiver is a procedural concept that courts do not rigidly employ in mechanical fashion."); *cf. State v. Payne*, 223 Ariz. 555, n. 8, 225 P.3d 1131, 1145 n. 8 (App.2009) (" 'If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue.' "), quoting *Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993); *State v. Smith*, 203 Ariz. 75, ¶ 12, 50 P.3d 825, 829 (2002) (appellate court may address argument otherwise waived); *State v. Lopez*, 217 Ariz. 433, n. 4, 175 P.3d 682, 687 n. 4 (App.2008) (exercising discretion to address issues first raised in reply brief). Furthermore, because the parties have filed supplemental briefs on the question of whether the trial court complied with *Hyder* in granting the post-verdict Rule 20 motions, the policy underlying the waiver rule favors our addressing the issue. *Cf. State v. Lopez*, 223 Ariz. 238, ¶ 6, 221 P.3d 1052, 1054 (App. 2009) (" 'The rule that issues not clearly raised in the opening brief are waived' serves 'to avoid surprising the parties by deciding their case on an issue they did not present and to prevent the court from deciding cases with no research assistance or analytical input from [both] parties.' "), quoting *Meiners v. Indus. Comm'n*, 213 Ariz. 536, n. 2, 145 P.3d 633, 635 n. 2 (App.2006).

¶ 11 Finally, our decision to reach the merits of this issue is supported by Arizona's Victims' Bill of Rights. *See* Ariz. Const. art. II, § 2.1(A)(10), (11) (crime victims have rights to "prompt and final conclusion of the case after the conviction and sentence" and to "have all rules governing criminal procedure and the admissibility of evidence in all criminal proceedings protect [their] rights"); *see also* A.R.S. § 13-4036 (appellate court may reverse judgment "consistent with ... justice and the rights of the state and the defendant"). The result of the trial court's decision here is far more injurious to the victim's rights than mere trial error. The decision transformed a guilty verdict in the victim's death into an acquittal to which double jeopardy rights potentially apply. Ac-

cordingly, under the unique circumstances presented here, in which the issue was squarely presented to the trial court, the result contravenes the victim's rights by upsetting a guilty verdict, and the issue has now been fully briefed on appeal, we address on the merits whether, in light of *Hyder*, the court erred when it granted defendants' post-verdict Rule 20 motions.

¶ 12 In its order contravening the jury's verdicts and acquitting the Wests, the trial court discussed at length why it believed there was insufficient evidence to support the defendants' convictions. Thus, it clearly redetermined the quantum of evidence in violation of *Hyder*. Although its reasoning was persuasive, the court did not find it previously had erred in considering improper evidence, nor did it identify any other legal error affecting the quantum of evidence, as *Hyder* requires. Without identifying such error, it was unable to grant the Rule 20 motions after the jury returned its guilty verdicts. Accordingly, the court's order must be reversed. *See Hyder*, 128 Ariz. at 224–25, 624 P.2d at 1272–73 (setting aside grant of post-trial Rule 20 motion because trial court failed to specify legal conclusions supporting decision); *Villarreal*, 136 Ariz. at 487, 666 P.2d at 1096 (vacating post-verdict order of acquittal for failing to comply with *Hyder* requirement); *Paoletto*, 133 Ariz. at 416, 652 P.2d at 155 (reversing grant of post-verdict Rule 20 motion where trial court's decision based on "factual disagreements with the jury"); *cf. State v. Cannon*, 192 Ariz. 236, ¶¶ 13–17, 963 P.2d 315, 318–19 (App.1998) (affirming trial court's post-verdict acquittal order because decision based on prior evidentiary error).

¶ 13 The Wests attempt to distinguish *Hyder* while offering theories for interpreting the trial court's ruling as "implicitly" complying with *Hyder's* rationale. They argue that, unlike in *Hyder*, the trial court did identify a mistake of law regarding the culpability of each defendant in that "the state erroneously told the jury during closing argument that the state did not have to prove which defendant caused the injury." But this does not appear to be an evidentiary error permitting nullification of the jury's verdict under *Hyder*. Rather, this is the type of prosecutorial

error that could justify a new trial. *See State v. Jones*, 188 Ariz. 534, 540, 937 P.2d 1182, 1188 (App.1996) (improper statements in closing argument may require new trial if they affected verdict).[4]

¶ 14 The Wests also contend that *Hyder* does not apply because they were acquitted of the charged offenses and were convicted of lesser offenses. Randall argues "*Hyder* did not involve the question of jury acquittal on the greater offense, conviction of a lesser offense, and the relationship between such acquittal and the trial judge's findings under Rule 20(b)." He maintains "[t]he jury's acquittal places the trial judge's pre-verdict denial of acquittal in a different evidentiary light than in *Hyder*—since the trial judge did not consider the sufficiency of the evidence under the lesser offense theory." Randall cites no authority in support of this argument, nor are we aware of any. Moreover, because the greater offense includes all elements of the lesser offense, the trial court's pre-verdict denial of the Rule 20 motions on the greater offenses necessarily implies that it found sufficient evidence for any lesser offenses. *See In re James P.*, 214 Ariz. 420, ¶ 19, 153 P.3d 1049, 1053 (App.2007) (" '[F]or one offense to be included within another, greater offense, the greater must have all the elements of the lesser plus at least one additional element.' "), *quoting In re Victoria K.*, 198 Ariz. 527, ¶ 15, 11 P.3d 1066, 1069 (App. 2000). Accordingly, we reject this argument as well.

## Conclusion

¶ 15 For the foregoing reasons, we reverse the trial court's order granting the Wests' Rule 20 motions and setting aside the jury verdicts and remand the case for further proceedings consistent with this opinion.

CONCURRING: JOSEPH W. HOWARD, Chief Judge, and GARYE L. VÁSQUEZ, Judge.

---

**4.** To the extent the Wests argue that we should find that the trial court complied with the "rationale" of *Hyder* or should reject "an overly confining interpretation of *Hyder*," we are without authority to overrule the clear pronouncements of our supreme court. *See State v. Szpyrka*, 223 Ariz. 390, ¶ 4, 224 P.3d 206, 208 (App.2010).