NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAVIER RAMOS-RAMIREZ, *Appellant.*

No. 1 CA-CR 16-0748
FILED 6-21-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-000953-001
The Honorable Alfred M. Fenzel, Judge *Retired*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Jon W. Thompson and Judge James P. Beene joined.

---

**S W A N N**, Judge:

¶1 Javier Ramos-Ramirez challenges the admission of the state's other-act evidence offered to show his propensity to commit the crimes of sexual misconduct for which he was charged and convicted. We hold that the evidence supported the superior court's finding that the probative value of the proffered other act, an attempted sexual assault, was not substantially outweighed by a danger of unfair prejudice. We therefore affirm, and we correct the superior court's sentencing minute entry to reflect the court's intended sentence.

## FACTS AND PROCEDURAL HISTORY

¶2 A grand jury indicted Ramos-Ramirez on seven counts for the rape of A.D. He pleaded not guilty.

¶3 At trial the state presented evidence of the following facts. On an early morning in February 2005, A.D. returned home from taking her husband to work. As normal, she had left their three children, ages four, seven, and nine, asleep at home. As A.D. entered her home, a man suddenly appeared behind her, covered her mouth with his hand, and held a screwdriver to her back. She told him he could take whatever he wanted, and he replied, "I want you." He claimed that he had a partner in A.D.'s children's room who would hurt them if she did not comply with his demands. He had a white shirt over his face, and she did not know who he was. He forced her to her bedroom and raped her, threatening her children several more times. After he left, A.D. made sure that her children were safe, and then called her sister, who called the police.

¶4 Police were not able to confirm the identity of the rapist until 2011, after a database connected Ramos-Ramirez with the single DNA profile found inside A.D. A.D. recognized Ramos-Ramirez's name because he had worked with her husband and was a social acquaintance of theirs.

¶5 Ramos-Ramirez testified in his defense that he and A.D. were involved in an extra-marital affair beginning in November 2004, and that

they regularly engaged in consensual sex. He claimed that the DNA found inside A.D. was the result of consensual sex the day before the rape, and denied he was the one who raped her.

¶6 Before trial, to show that Ramos-Ramirez had a propensity to commit the crimes charged, the state moved to introduce evidence under Ariz. R. Evid. ("Rule") 404(c) of another incident of sexual misconduct, in which he had been convicted of attempted kidnapping and attempted sexual conduct with a minor. Specifically, the state sought to call S.W., the victim of Ramos-Ramirez's other crime, to testify.

¶7 The state asserted that S.W. was prepared to testify to the following facts. In August 2007, as S.W. was leaving the women's restroom at a grocery store, Ramos-Ramirez was standing right in front of her, staring at her. She had never seen him before. He immediately forced her back into the restroom, grabbed her by her waist, and pulled her against him, placing their weight against the closed door. She tried to call police, but he threw her phone into the corner. When she screamed, he put his hand over her mouth and his fingers up her nostrils so that she could not breathe. He began to unbutton her pants, but a bystander was able to push the restroom door open and Ramos-Ramirez ran away. He was caught by bystanders and police near the grocery store. S.W. was thirteen years old at the time.

¶8 Ramos-Ramirez opposed the admission of S.W.'s testimony, arguing that its probative value would be substantially outweighed by a danger of unfair prejudice, mostly due to the highly inflammatory nature of child sexual assault crimes. After holding oral argument, the court allowed the testimony, but ordered the parties to "sanitize" it, leaving out any mention of S.W.'s age because it was not relevant, and had the potential to unfairly prejudice Ramos-Ramirez. The court's minute entry made specific findings in support of the ruling under Rule 404(c). S.W. testified to the above information at trial.

¶9 The jury found Ramos-Ramirez guilty of Counts 1 and 3 (sexual assault), Counts 4 and 5 (attempted sexual assault), Count 6 (kidnapping), and Count 7 (burglary), but acquitted him of Count 2 (sexual assault). The court sentenced Ramos-Ramirez to 24.5 years' imprisonment, and he timely appeals.

**DISCUSSION**

I.     THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY
       ADMITTING OTHER-ACT EVIDENCE UNDER RULE 404(c).

**¶10**          Ramos-Ramirez contends that the superior court's admission
of S.W.'s testimony about the attempted sexual assault was error because it
was minimally probative and highly prejudicial.  We review the superior
court's admission of other-act evidence under Rule 404(c) for an abuse of
discretion, *State v. James*, 242 Ariz. 126, 130, ¶ 11 (App. 2017), and we will
reverse the court's ruling "only upon a finding of clear prejudice," *State v.
Fischer*, 219 Ariz. 408, 416, ¶ 24 (App. 2008).

**¶11**          Rule 404(c) provides that, as an exception to the general rule
prohibiting character evidence, when "a defendant is charged with having
committed a sexual offense, . . . evidence of other crimes, wrongs, or acts
may be admitted by the court if relevant to show that the defendant had a
character trait giving rise to an aberrant sexual propensity to commit the
offense charged."  For the evidence to be admissible, the court must make
several findings; as relevant here, it must find that the probative value of
the other act is not substantially outweighed by the danger of unfair
prejudice.  Rule 404(c)(1)(A)–(C).  The Rule provides several factors to guide
the superior court's analysis, including temporal remoteness of the other
act, similarity of the other act, strength of the evidence that defendant
committed the other act, frequency of the other acts, surrounding
circumstances, and relevant intervening events.  Rule 404(c)(1)(C).

**¶12**          Here, Ramos-Ramirez's argument rests largely on the court's
analysis of the factual similarities between the attempted sexual assault in
2007 and the rape in 2005.  In particular, Ramos-Ramirez argues that the
court's analysis is based on the incorrect finding that both victims were
strangers to him, and that if the court had known the facts as revealed at
trial (that Ramos-Ramirez knew A.D.), it would not have admitted the
other-act evidence.

**¶13**          In its detailed pretrial ruling admitting the testimony, the
court found that "both [acts] appear to involve the use of force to cause or
attempt to cause non-consensual sexual activity with *an unknown victim*."
(Emphasis added.)  Ramos-Ramirez is correct that evidence presented at
trial showed that he knew A.D. at the time of the rape, and that, unlike S.W.,
she was not "an unknown victim."  But even if the evidence that Ramos-
Ramirez knew A.D. had been available at the time of the evidentiary
hearing, and the court had considered Ramos-Ramirez's familiarity with

the victims as a difference, rather than a similarity, the other-act evidence would still have been admissible. *See* Rule 404 cmt. to 1997 amend. ("[T]he rule does not contemplate any bright line test of . . . similarity."); *State v. Benson*, 232 Ariz. 452, 459 (2013) (the two acts "did not have to precisely align" to be admissible under Rule 404).

¶14        In the context of one who is alleged to have attempted forcible rape on multiple occasions, the difference between preying on a stranger and preying on an acquaintance is hardly significant. And the probative value of evidence that the defendant preyed on two women with intent to force sexual activity is sufficient to withstand any non-trivial prejudicial impact — indeed, it is difficult to imagine such evidence lacking prejudicial effect. *See State v. Lee*, 189 Ariz. 590, 599–600 (1997) ("[N]ot all harmful evidence is unfairly prejudicial.") The evidence of Ramos-Ramirez's aberrant sexual propensity to commit non-consensual acts was also probative because it cast doubt on his trial defense that he had a prior intimate relationship with A.D. and that the sex was consensual. The court's single factual error, therefore, does not warrant relief on appeal.

¶15        To further support his contention that the court placed significant, or even dispositive, weight on the finding that he did not know either victim, Ramos-Ramirez points to the court's finding that, with regard to surrounding circumstances, "neither victim knew the defendant." But the point of that statement was not that Ramos-Ramirez did not know his victims, but that his victims did not know him. S.W. had never seen Ramos-Ramirez before, and even though A.D. knew Ramos-Ramirez, his face was completely covered by a shirt, and she did not learn his identity until years later.

¶16        Ramos-Ramirez also lists "other areas of contrast" between the acts that the superior court did not mention, including that: one act was in a more public place, while the other was in a private home; one involved a weapon (a screwdriver), the other did not; one victim was a minor, the other an adult; one act did not involve penetration, the other did; and he claimed to have an accomplice in one, but not the other. But these purported differences pale in comparison to the important similarities of the acts. *See State v. Lehr*, 227 Ariz. 140, 147, ¶ 21 (2011). For example, the superior court's analysis finds that both acts involved "lying in wait and ambushing the victim," and most importantly, that "both . . . involve[d] the use of force to cause or attempt to cause non-consensual sexual activity." The fact that one victim was a minor is of little consequence here, as is the fact that Ramos-Ramirez was apprehended before he could complete the other act. And the fact that Ramos-Ramirez accosted both victims as they

were in a doorway renders the public/private distinction thin at best. We conclude that the court appropriately weighed the probative and prejudicial value of the other-act evidence, and reasonably found it was sufficient to create an inference that Ramos-Ramirez had an aberrant sexual propensity to commit the crime charged.

II.     WE CORRECT THE SUPERIOR COURT'S SENTENCING MINUTE ENTRY TO REFLECT THE ORAL PRONOUNCEMENT OF SENTENCE.

**¶17**     The superior court's oral pronouncement of Ramos-Ramirez's sentence (24.5 years' imprisonment) conflicts with its sentencing minute entry (31.5 years). In its oral pronouncement, the court ordered that Counts 1 (10.5 years), 3 (10.5 years), and 7 (3.5 years) be served consecutively to each other, and that Counts 4 (7.5 years), 5 (7.5 years), and 6 (10.5 years) be served concurrently with each other, and concurrently with the other sentences. But the court's minute entry orders that Counts 1 and 3 be served consecutively to each other, and that Counts 4 through 7 be served concurrently with each other but consecutive to Counts 1 and 3.

**¶18**     The state does not dispute that Ramos-Ramirez's sentence should be the one that the court pronounced at the hearing—24.5 years' imprisonment. *See State v. Whitney*, 159 Ariz. 476, 487 (1989) ("Oral pronouncement in open court controls over the minute entry."). Accordingly, pursuant to A.R.S. § 13-4037(A), we amend the superior court's sentencing minute entry to reflect its intent that Counts 1, 3, and 7 be served consecutively to each other and that Counts 4, 5, and 6 run concurrently to each other and concurrently to the total of Counts 1, 3, and 7. *See State v. Stevens*, 173 Ariz. 494, 496 (App. 1992) (permitting this court to correct a clerical sentencing error without remanding to the superior court).

**CONCLUSION**

**¶19**     For the foregoing reasons, we affirm Ramos-Ramirez's convictions and sentences, as modified.

